

FILED

Aug 28 2019, 8:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anne C. Kaiser
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Aaron Moran Brown,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

August 28, 2019

Court of Appeals Case No.
18A-PC-3128

Appeal from the DeKalb Circuit
Court

The Honorable Kurt Bentley
Grimm, Judge

Trial Court Cause No.
17C01-9402-CF-8

**Tavitas, Judge.**

## Case Summary

[1] Aaron Moran Brown appeals from the post-conviction court's ("PC court")
entry of summary disposition in favor of the State on Brown's successive
petition for post-conviction relief ("PCR"). We affirm.

## Issue

The sole issue on appeal is whether the PC court erred in granting summary disposition for the State and denying Brown's successive petition for PCR on the ground that Brown's aggregate sentence is unconstitutional.

## Facts

This matter arises from Brown's challenge to his convictions and sentences in light of the United States Supreme Court's holding in *Miller v. Alabama*, 567 U.S. 460, 489 (2012), which declared that mandatory sentencing schemes that require the imposition of life sentences without the possibility of parole for juvenile homicide offenders violate the Eighth Amendment. In the aftermath of *Miller*, incarcerated offenders throughout the country—including Brown—who received significant sentences as juveniles, have challenged their sentences as unconstitutional.

The facts as stated in Brown's direct appeal follow:

> On February 7, 1994, Brown was charged by information with the murders of Elizabeth Grueb, his biological mother, and Jeffrey Grueb, his step-father. He pled guilty without a plea agreement in September of 1994. Following a guilty plea hearing the trial court entered judgment on the plea. The evidence reveals that in the early morning hours of February 6, 1994, Brown, then 16-years old, lay in wait for his parents to return home from a party, and upon their arrival, murdered them with a shotgun. Shortly thereafter, Brown turned himself in to the authorities.

*Brown v. State*, 659 N.E.2d 671, 672 (Ind. Ct. App. 1995), *trans. denied*.

At Brown's sentencing hearing on December 16, 1994, the trial court found the following aggravating circumstances: (1) "despite the fact that [Brown] ha[d] no prior record of criminal activity [he was] in need of correctional or rehabilitative treatment that c[ould] best be provided by [his] commitment to a penal facility"; (2) Brown's membership in a gang; (3) one of Brown's murder victims was his mother; (4) Brown premeditated the murders and lay in wait for his mother and stepfather; (5) Brown's lack of remorse; and (6) Brown's statement, after the murders, that he could conceive of killing again under certain circumstances. Appellant's App. Vol. II p. 29.

The trial court found Brown's youthful age to be a mitigating circumstance and stated: "When this happened you were sixteen (16). You're seventeen (17) as you sit here today. In the eyes of the law in general terms, not even yet an adult." *Id*. at 30. The trial court also found Brown's lack of prior criminal history, as well as his prompt confession and cooperation with law enforcement to be mitigating. Concluding that the aggravating circumstances outweighed the mitigating circumstances, the trial court imposed consecutive fifty-year sentences on each of Brown's murder convictions, for an aggregate sentence of one hundred years.

On direct appeal, Brown argued that: (1) his sentence was manifestly unreasonable in light of the nature of his offenses and his character; (2) he was denied his right against self-incrimination; (3) the trial court improperly articulated aggravating circumstances and overlooked, or assigned inadequate weight, to significant mitigating circumstances; and (4) the trial court "failed to

contemplate Brown's general character when structuring his sentence[.]" We affirmed, and our Supreme Court denied transfer. *Brown*, 659 N.E.2d at 674.

[8] In May 2000, Brown filed a pro se petition for post-conviction relief wherein he argued that his sentence violates the Eighth Amendment of the U.S. Constitution and Article 1, Section 16 of the Indiana Constitution because "no [] consideration was made in Brown's sentencing" to "[a] juvenile's specific characteristics[,]" and because his sentence is "the functional equivalent of a [sentence of] life without parole."[1] Appellant's App. Vol. II pp. 36-37. After a hearing on March 20, 2003, the PC court denied Brown's petition for PCR.

[9] On November 3, 2017, Brown sought, and we subsequently granted, leave to file a successive petition for PCR pursuant to Post-Conviction Rule 1, Section 12. Brown filed his successive petition for PCR on November 3, 2017, and argued that he is entitled to relief under *Miller*. On March 26, 2018, the State moved for summary disposition. On July 31, 2018, the trial court conducted a hearing on the State's motion for summary disposition. On September 12, 2018, the trial court granted summary disposition in favor of the State and against Brown.[2] Brown now appeals from the entry of summary disposition in the State's favor.

---

[1] The Department of Correction has determined Brown's earliest anticipated release date to be February 29, 2040, when Brown will be sixty-two years old. Thus, as the State argued below, "Brown's actual sentence is 46 years in real time." App. Vol. II pp. 37, 54.

[2] The trial court did not rule on Brown's ensuing motion to correct error, which was deemed denied.

# Analysis

[10] Brown argues that "the trial court did not properly consider his youth at his original sentencing[,]" and that, pursuant to *Miller*, "he [i]s entitled to a new sentencing hearing." Appellant's Br. p. 12. The State counters that "[Brown] does not fall within" the category of offenders contemplated by the Supreme Court in *Miller* because Brown "received a *Miller*-compliant sentencing hearing" and is eligible for parole at the age of sixty-two. Appellee's Br. pp. 14, 38.

[11] We review the grant of a motion for summary disposition in PCR proceedings on appeal in the same way as a motion for summary judgment in a civil matter. *Norris v. State*, 896 N.E.2d 1149, 1151 (Ind. 2008). Thus, summary disposition—like summary judgment—is a matter for appellate *de novo* review. *Id.* Post-Conviction Rule 1(4)(g) provides:

> The court may grant a motion by either party for summary disposition of the petition when it appears from the pleadings, depositions, answers to interrogatories, admissions, stipulations of fact, and any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The court may ask for oral argument on the legal issue raised. If an issue of material fact is raised, then the court shall hold an evidentiary hearing as soon as reasonably possible.

[12] A PC court is permitted to summarily deny a petition for PCR only if the pleadings conclusively show the petitioner is entitled to no relief as a matter of law. *Gann v. State*, 550 N.E.2d 803, 804 (Ind. Ct. App. 1990). The necessity of an evidentiary hearing is avoided when the pleadings show only issues of law.

*Id.* The need for a hearing is not avoided, however, when a determination of the issues hinges, in whole or in part, upon facts not resolved. *Id.* This is true even though the petitioner has only a remote chance of establishing his claim. *Id.* at 804-805.

[13] The Eighth Amendment's prohibition of cruel and unusual punishment "guarantees individuals the right not to be subjected to excessive sanctions." *Miller*, 567 U.S. at 469, 132 S. Ct. at 2463. In *Miller*, the United States Supreme Court ("U.S. Supreme Court") held that mandatory sentencing schemes that require lifetime incarceration without possibility of parole for juvenile homicide offenders violate the Eighth Amendment. 567 U.S. at 489, 132 S. Ct. at 2475. Subsequently, in *Montgomery v. Louisiana*, 136 S. Ct. 718, 736 (2016), the U.S. Supreme Court gave its *Miller* holding retroactive effect. The Seventh Circuit has since held that *Miller* applies, not only to a life sentence, but also to sentences that—although set out as a term of years—are essentially a life sentence. *McKinley v. Butler*, 809 F.3d 908 (7th Cir. 2016).

[14] Specifically, *Miller* holds that a sentencing scheme that "prevents those meting out punishment from considering a juvenile's 'lessened culpability' and greater capacity for change'" impedes "individualized sentencing for defendants facing the most serious penalties" and is unconstitutional as violative of the Eighth Amendment. *Miller*, 567 U.S. at 465, 483, 132 S. Ct. at 2460, 2471. "[S]entencers must be able to consider the mitigating qualities of youth" because "the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even

when they commit terrible crimes." 567 U.S. ---, 132 S. Ct. at 2458 (citing *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183 (2005), and *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011 (2010)).

> . . . [M]andatory life-without-parole sentences for children "pos[e] too great a risk of disproportionate punishment." *Miller*, 567 U.S. at 479, 132 S. Ct. at 2469. *Miller* requires that before sentencing a juvenile to life without parole, the sentencing judge take into account "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." The Court recognized that a sentencer might encounter the rare juvenile offender who exhibits such irretrievable depravity that rehabilitation is impossible and life without parole is justified. But in light of "children's diminished culpability and heightened capacity for change," *Miller* made clear that "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon."

*Montgomery*, 136 S. Ct. at 733 (citations omitted).

In its order on the State's motion for summary judgment, the PC court found:

> . . . Here, Brown did not receive a mandatory life sentence, nor did he receive a sentence which precluded parole. . . . [E]ven if Brown is correct in his claim that his sentence was a *de facto* life sentence, he would also have to demonstrate that his *de facto* life sentence was without parole in order to implicate *Miller*. Even then, *Miller* does not preclude the imposition of a mandatory life sentence without parole upon a defendant who committed the qualifying crime as a juvenile, rather it holds that before such sentence imposition can occur[,] certain factors have to be analyzed and considered by the sentencing court. Thus, for Brown to be successful on his petition for post-conviction relief, he must demonstrate that the sentence he received was in fact, if

not [in] name, a life sentence and the nature of the sentence in essence renders any prospect of parole merely illusory.

* * * * *

Due to eligibility for parole, and Indiana's good time credit statutes, Brown can potentially be released from prison when he is in his early 60's. He did not receive a life sentence without parole. He did not receive a de facto life sentence without parole. He did not receive a de facto life sentence where the opportunity for parole or release is merely illusory. In short, Brown did not receive a sentence that implicates the narrow holding of *Miller*, and as a matter of law he is not entitled to the relief requested in his petition for post-conviction relief.

Appellant's App. pp. 199-201.

[17] The trial court's reading of *Miller* is underscored by the Seventh Circuit's reasoning in *Kelly v. Brown*, 851 F.3d 686, 687 (7th Cir. 2017), which is factually akin to the instant case. Kelly sought leave from the Seventh Circuit to file a successive petition for habeas relief from a 110-year sentence—comprised of two, fifty-five year terms—for murders that Kelly committed when he was sixteen years old. Kelly would be eligible for parole at the age of seventy. The Seventh Circuit reasoned that, in affirming the trial court on direct appeal, our Supreme Court found that the trial court: (1) imposed the presumptive (not an enhanced) sentence for each murder; (2) "properly outlined its reasoning for [Kelly]'s sentences"; (3) adequately balanced the aggravating and mitigating circumstances"; and (4) "considered [Kelly's] age[.]" *Id*. at 687. Thus, the Seventh Court concluded, "Kelly was afforded all he was entitled to under

*Miller*." Accordingly, the Seventh Circuit denied authorization for Kelly's successive petition for habeas relief.

[18] Here, the record reveals that the trial court, in its discretion, entered an extensive sentencing statement and engaged in thoughtful consideration of the aggravating and mitigating circumstances, including Brown's youthful age at the time he committed the murders. Regarding Brown's youthful age, the trial court stated: "When this happened you were sixteen (16). You're seventeen (17) as you sit here today. In the eyes of the law in general terms, not even yet an adult." Appellant's App. Vol. II p. 30. After concluding that the aggravating circumstances outweighed the mitigating circumstances, the trial court imposed an enhanced sentence of fifty years on each count, however, the court did not impose the maximum sentence.[3]

[19] We need not reach the question of whether the trial court's discussion of Brown's youthful age was adequate or too "cursory." *See Kelly*, 851 F.3d at 689 (J. Posner, dissenting). Brown is not a candidate for *Miller* review. The law is well settled that "[a] State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." *See Montgomery*, 136 S. Ct. at 736. Brown did not receive a mandatory

---

[3] At the time of Brown's offenses, the sentencing range for murder was thirty to sixty years, with a presumptive sentence of forty years, with not more than twenty years added for aggravating circumstances or not more than ten years substracted for mitigating circumstances. Ind. Code § 35-50-2-3 (1993). Thus, Brown faced a maximum sentence of sixty years on each murder conviction, for a maximum aggregate sentence of 120 years.

sentence of life without the possibility of parole; rather, Brown is eligible for parole with an earliest possible release date of age sixty-two. The fact that the widely-accepted remedy for a *Miller* violation is already available to Brown undercuts Brown's claim that a *Miller* violation has occurred here.

[20] To the extent that Brown seeks revision of his sentence pursuant to Indiana Appellate Rule 7(B), Brown has already unsuccessfully argued, on direct appeal, that his sentence is manifestly unreasonable in light of the nature of the offenses and his character.[4] After considering the aggravating and mitigating circumstances, including Brown's mitigating youthful age at the time of the murders, we concluded that "[c]onsidering the nature of the offense, the character of the offender and the many aggravating factors, Brown's sentence is not unreasonable." *Brown*, 659 N.E.2d at 675. *Cf. Martez Brown v. State*, 10 N.E.3d 1 (Ind. 2014) (revising offender's sentence downward on direct appeal pursuant to Rule 7(B)), *cf. Fuller v. State*, 9 N.E.3d 653 (Ind. 2014) (reducing offender's sentence on direct appeal, pursuant to Rule 7(B)). The PC court did not err in granting the State's motion for summary disposition because Brown is entitled to no relief as a matter of law.[5]

---

[4] When Brown was sentenced in 1994, the standard for reviewing a sentence was the now-obsolete "manifestly unreasonable" standard. *See* Indiana Appellate Rule 17(B) (1994).

[5] We note that transfer is pending in *State v. Stidham*, 110 N.E.3d 410 (Ind. Ct. App. 2018), in which we reversed the PC court's reduction of Stidham's sentence pursuant to its grant of Stidham's petition for PCR. In reversing the PC court's judgment, a panel of this Court concluded that: (1) Stidham's claims that his sentence violated the Eighth Amendment of the U.S. Constitution and Article 1, Section 16 of the Indiana Constitution were barred on principle of res judicata as Stidham asserted the same claim on direct appeal in 1993 "and the Indiana Supreme Court rejected the claim"; and (2) "[t]o the extent Stidham's claims [we]re

# Conclusion

[21] The PC court did not err in granting the State's motion for summary disposition. We affirm.

[22] Affirmed.

Crone, J., and Bradford, J., concur.

---

based on improvements [in his character] since 1994, [Stidham was] essentially requesting a sentence modification," which was not authorized under the post-conviction rules, which "do not provide for modification of a sentence which has been established by the Legislature as appropriate for the offense and which has been found to be constitutional." 110 N.E.3d at 420, 421.

Brown argues that his case is readily distinguishable from *Stidham* because, unlike Stidham, Brown: (1) did not assert an Eighth Amendment claim on direct appeal; and (2) has not previously presented any tribunal with evidence of his rehabilitation efforts.